2012 ND 175

Sheryl M. FINES and Sheryl M. Fines, as substituted for Bruce Balliet, deceased, Plaintiffs

Sheryl M. Fines, Appellant

v.

RESSLER ENTERPRISES, INC., d/b/a Ressler Siding and Windows, Defendant, Third Party Plaintiff and Appellee

and

Associated Materials, Inc., d/b/a Alside, Third Party Defendant.

No. 20110357.

Supreme Court of North Dakota.

Aug. 21, 2012.

Justin D. Hager, Bismarck, ND, for appellant.

Daniel J. Nagle, Mandan, ND, for defendant, third party plaintiff and appellee.

KAPSNER, Justice.

[¶ 1] Sheryl Fines appeals from a judgment dismissing her action against Ressler Enterprises, Inc., doing business as Ressler Siding and Windows (Ressler). Fines argues the district court abused its discretion in dismissing her action against Ressler as a sanction for spoliation of evidence. She contends dismissal was not appropriate because the court erred in determining Ressler was prejudiced by the destruction of the evidence and the court failed to consider the availability of less severe sanctions. Under the facts of this case, we conclude the district court did not abuse its discretion in imposing the sanction of dismissal. We affirm.

I

[¶ 2] In September 2007, Ressler installed siding on Fines' property. Due to problems with the siding, the manufacturer agreed to provide all new siding. Ressler installed the new siding in September 2007. Fines alleged there were also problems with the new siding and filed a warranty claim, which the manufacturer denied.

[¶ 3] Fines filed a complaint, alleging Ressler negligently installed the siding on her property. The complaint was dated July 28, 2010, and was served on August 3, 2010. Amended complaints were filed in August 2010. On September 3, 2010, Ressler filed an answer, denying Fines' allegations and claiming any damages were caused or contributed to by the acts of third persons. Ressler also brought a cross-claim against a third-party defendant, Associated Materials, Inc., the siding manufacturer, alleging a breach of warranty and claiming the siding was defective. Ressler's claim against Associated Materials, Inc. was later dismissed.

[¶ 4] At 12:57 p.m. on Friday, September 3, 2010, Ressler's counsel received a faxed letter from Fines' counsel stating a third party had been hired to remove and replace the siding and noting the work was scheduled to begin on Monday, September 6, 2010, which was a national holiday. The letter stated the "defective siding can be saved if you would like it[,]" but added Ressler would be responsible for any costs to retain the siding. Ressler's counsel responded by faxed letter that same day, demanding the siding not be removed until Ressler and its experts had an opportunity

to inspect and examine the siding on the building. Fines had the siding removed and replaced.

[¶ 5] On October 14, 2011, Ressler moved for summary judgment, arguing the action should be dismissed because Fines unnecessarily destroyed the evidence without providing Ressler with sufficient notice, Ressler did not have an opportunity to have a third-party expert examine the siding on the property, and Ressler was unable to properly defend itself because of the spoliation. Fines responded, arguing Ressler had an opportunity to inspect the property, photographs and video of the siding had been taken and were provided to Ressler during discovery, and dismissal was not appropriate. On November 22, 2011, the district court entered an order dismissing the case, ruling it had the inherent power to sanction for the destruction of evidence, Fines was culpable in the destruction of the evidence, Ressler was prejudiced by Fines' decision to remove the siding, and dismissal was the only appropriate sanction.

## II

[¶ 6] Fines argues the district court erred as a matter of law in exercising its inherent sanctioning power to dismiss the action, the court erred in finding Ressler was prejudiced, and the court failed to determine the least restrictive available sanction.

[¶ 7] When litigation is reasonably foreseeable, there is a duty to preserve evidence. *See Bachmeier v. Wallwork Truck Ctrs.*, 507 N.W.2d 527, 532 (N.D.1993) (*Bachmeier I* ) (stating sanctions may be appropriate for the destruction of evidence relevant to a lawsuit); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed.Cir.2011); *Miller v. Lankow*, 801 N.W.2d 120, 127–28 (Minn. 2011); *Bass–Davis v. Davis*, 122 Nev. 442,

134 P.3d 103, 108 (2006). Spoliation is the destruction of or failure to preserve probative evidence. *See, e.g., Micron Tech.*, at 1320; *AMLI Residential Props., Inc. v. Ga. Power Co.*, 293 Ga.App. 358, 667 S.E.2d 150, 153 (2008); *Miller*, at 127; 32B Am.Jur.2d *Federal Courts* § 2111 (2007 & Supp.2012). We have stated the district court may exercise its inherent power to sanction when evidence relevant to a lawsuit is destroyed or spoiled. *Bachmeier I*, at 532. A court's decision to exercise its inherent power to sanction will only be reversed on appeal if the court abused its discretion. *Id.* at 533. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Belgarde v. Askim*, 2001 ND 206, ¶ 6, 636 N.W.2d 916.

[¶ 8] Sanctions for the spoliation of evidence serve two purposes: "First, sanctions exist to penalize those whose conduct is deemed to warrant a sanction; second, they exist to deter others who may be tempted to behave in such a way as to warrant the imposition of a sanction." *Bachmeier I*, 507 N.W.2d at 533. Sanctions have an additional goal of protecting the integrity of the legal process by "evening the ... playing field." *Id.* Sanctions for spoliation of evidence require a case-by-case analysis of the facts and circumstances present in each case. *Id.* at 534. We have stated a court should consider "the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case; and, the availability of less severe alternative sanctions." *Id.* While we favor resolving disputes on their merits, we must bal-

ance that preference against the need to penalize those whose conduct warrants a sanction and to deter those who may be tempted to behave in a way that would warrant a sanction. *See id.* at 533. "Dismissal of the entire case with prejudice is perhaps the most restrictive sanction which exists." *Id.*

[¶ 9] We turn our attention to the facts of *Bachmeier I* in order to analyze whether the judicial response to the spoliation of evidence in the case at hand was appropriate. *Bachmeier I* arose out of the second litigation that resulted from the death of Steven Bachmeier. 507 N.W.2d at 530. The apparent cause of his death was the breakdown of the right hub of a truck in which he was riding as a passenger. *Id.* The first litigation was a wrongful death action brought against the owner of the truck. *Id.* The owner's insurer hired an expert to examine the hub and to prepare a report. *Id.* The wrongful death action was settled, after which the truck owner's insurer notified the examining expert that the case had settled and that the expert could dispose of the parts in his possession. *Id.* No litigation was pending when the hub was destroyed. *See id.* Rather, one year after the hub's destruction, the product liability litigation—the second litigation at issue in *Bachmeier I*—was commenced. *Id.*

[¶ 10] In *Bachmeier I,* we noted, "First, this is not a case where the evidence was 'willfully' destroyed. Second, Loper and Great West, the people who destroyed the evidence, were not parties to the second action, nor were they real parties in interest. Finally, the hub was not in Bachmeier's possession or control at the time of its destruction." *Bachmeier I,* 507 N.W.2d at 533–34 (citations omitted). We noted the record contained no expert testimony stating a defense could not be proven due to the destruction of the hub. *Id.*

at 535. Instead, "What is included in the record is a legal argument advocating the preference of having the actual hub available. This is not adequate." *Id.* Because we concluded the unavailability of the hub itself was not adequate proof of prejudice, we reversed and remanded for the court to consider the significance of the detriment to the defendant and to allow the defendant to present expert testimony showing the missing evidence was essential to its defense. *Id.* Each of the facts in *Bachmeier I* is in marked contrast to the operative facts in this case.

[¶ 11] Here, the litigation was commenced by Fines with a complaint served August 3, 2010. In July 2010, Fines obtained an estimate for the cost of removal and replacement of the siding. The evidence remained within the control of Fines. Fines gave Ressler no notice of intent to remove the siding until all practical ability to have an expert inspect the siding in place was removed. Upon receiving notice in the afternoon on Friday, September 3, 2010, preceding the Monday, September 6, 2010, holiday on which the siding was going to be removed, Ressler's attorney responded with a clear request that the siding remain in place so it could be inspected. Fines ignored that communication. Litigation tactics like this are not only prejudicial to the other party, but offensive. We have stated sanctions for the spoliation of evidence penalize inappropriate conduct and "exist to deter others who may be tempted to behave in such a way[.]" *Bachmeier I,* 507 N.W.2d at 533. Commencing a lawsuit and spoiling access to evidence within weeks of that commencement is the type of conduct that should be deterred.

[¶ 12] To support the position that Ressler was prejudiced by the spoliation, Ressler submitted an affidavit of James A. Skaret, P.E., who asserted:

1. My name is James A. Skaret, P.E., and I have been the North Dakota Affiliate of the Investigative Engineer's Association since 1995.

2. During the past 16 years I have provided investigative/forensic engineering services to insurance companies, attorneys and others on a variety of types and sizes of property damage and other claims. I have provided services on a total of more than 1,400 claims.

3. Most of these claims have dealt with property damage and have included claims involving damage to siding materials on residential and/or commercial structures.

4. To render a professional opinion regarding the cause of most types of property damage requires an opportunity to conduct a site inspection including an inspection of the damaged property and other evidence before the damaged property has been removed and/or repaired or replaced.

5. Inspection using photographs provided by others is an option if there is no other alternative. However, there is often pertinent evidence that is not depicted by photographs.

[¶ 13] The law on the district court's inherent authority to sanction for spoliation of evidence requires the district court to consider three factors. The district court in this case dismissed Fines' action as a sanction after considering each of the three factors—Fines' culpability, the prejudice to Ressler, and the requested sanction:

The first factor is the culpability, or state of mind, of the party against whom the sanctions are being imposed. In this case the plaintiff is clearly culpable in the destruction of the siding. The plaintiff had obtained an estimate for the cost of removal and replacement of the siding in July 2010. At no time before September 3, 2010 did the plaintiff contact the defendants to inform the defendants that she intended to remove and replace the siding and that the defendants should have someone examine the siding if they wished to before the siding was removed. On September 3, 2010, the defendants unequivocally demanded that the plaintiff not remove the siding, but leave it in place. The plaintiff ignored the request and went ahead with removal and replacement. There is no evidence before the Court that removal and replacement of the siding was in any way an emergency or that there was any other reason the project could not wait, other than possibly the schedule of the contractor doing the project. Again, the plaintiff should have informed the defendants as early as July that the project was to be done at some time in the future, and the defendants would then have had adequate notice and opportunity to have someone examine the siding.

The second factor is the prejudice against the moving party and the degree of the prejudice. The defendants argue that examining pictures and video of the siding are not the same as examining the actual siding in place as installed. The plaintiff argues that pictures and video are enough, and that the defendants have all the same information that the plaintiff does. This is not accurate, as the plaintiff has the benefit of the testimony of the contractor who removed the subject siding and installed the new siding. The defendants have no objective third party to testify. All they have is their own testimony that they installed the siding correctly. Obviously a jury will look at the defendants['] motive in testifying and be cognizant of the

fact that the defendants may have a reason to lie or shade the truth. The plaintiff argues that the contractor who did the removal/replacement is not an expert witness but a mere fact witness. However, this ignores two facts (1) that the contractor will likely be perceived by the jury as an expert whether he is called one or not, because he will testify as to his experience, his practices, his observations, and what he did to rectify the situation, and (2) the contractor will likely be perceived by the jury as an objective witness who has no interest in the outcome of the trial. The plaintiff's action in removing the siding deprived the defendants of an opportunity to have an objective witness testify, whether the witness was an expert or not.

The final factor is the availability of less severe alternative sanctions. The issue in this case is whether the defendants negligently installed the siding. The defendants, due to the plaintiff's actions, did not have a reasonable opportunity to have an objective party examine the siding as installed. Once the siding was removed, the evidence of the manner and means of installation was destroyed. A trial is to be a determination of truth. Under the circumstances now present in this case, such a determination is impossible. Therefore, the Court finds dismissal of the Complaint is the only appropriate sanction.

[¶ 14] We conclude the district court properly considered each factor in imposing the sanction of dismissal against Fines. We note the remedy in this case is unusual, and we emphasize that courts typically should employ less drastic remedies. *See Bachmeier I*, 507 N.W.2d at 533 ("[W]hen the court exercises its inherent [sanctioning] power ... the trial court has a duty to impose the least restrictive sanction available under the circumstances."). Yet when conduct is egregious, as it was here,

a greater range of sanctions comes into play.

[¶ 15] After *Bachmeier I* was remanded to the trial court, it resulted in a summary judgment of dismissal based on prejudice because of lack of access to the hub. *Bachmeier v. Wallwork Truck Ctrs.*, 544 N.W.2d 122, 124 (N.D.1996) (*Bachmeier II*). The dismissal was based upon the court's inherent power to sanction for spoliation of evidence. *See id.* On appeal, this Court affirmed. *Id.* at 123. In *Bachmeier II*, we said:

> The appellant who is contesting the district court's choice of a sanction has the burden of showing the abuse of discretion, and that burden "is met only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate." *Patton v. Newmar Corporation*, 538 N.W.2d 116, 119 (Minn.1995) (quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir.1992)).

*Id.* at 125.

[¶ 16] From *Bachmeier II*, it is apparent that dismissal can result when spoliation is merely neglectful. In *Bachmeier I*, this Court noted those cases supporting such sanctions when willful destruction of access to the evidence is occasioned either by the party or the party's agent. 507 N.W.2d at 533 (citing *Graves v. Daley*, 172 Ill.App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679, 681–82 (1988); *State Farm Fire & Cas. Co. v. Frigidaire*, 146 F.R.D. 160 (N.D.Ill.1992)). *See also Story v. RAJ Properties, Inc.*, 909 So.2d 797, 804 (Ala.2005).

[¶ 17] Here, Fines asserted the installation of the siding was faulty, and Fines willfully removed the possibility of having an expert inspect the siding as installed. Fines' original and amended complaints alleged:

Material defects have been found in the siding of the premises including but not limited to buckled siding, siding that is not attached or is improperly attached to the building, cracked siding, bulging siding, siding that does not overlap properly, and/or improperly installed siding and channel work over the entirety of the premises.

. . . .

... By failing to properly install the siding on the premises, the defendants breached the most essential term of the contract.

The trial court analyzed the problem created when Fines removed the possibility of having an objective witness testify about the siding as installed: "Once the siding was removed, the evidence of the manner and means of installation was destroyed." Fines removed the siding after commencing the litigation and after receiving a specific request to preserve the evidence. Under the facts of this case, we hold the district court did not abuse its discretion by imposing the sanction of dismissal against Fines.

## III

[¶ 18]  We affirm, concluding the district court properly applied the three factors for spoliation of evidence and did not abuse its discretion in sanctioning Fines by dismissing her action against Ressler.

[¶ 19]  DANIEL J. CROTHERS, Acting C.J., and DALE V. SANDSTROM, JJ., concur.

[¶ 20]  The Honorable WILLIAM F. HODNY, S.J., sitting in place of VANDE WALLE, C.J., disqualified.

MARING, Justice, dissenting.

[¶ 21]  I, respectfully, dissent.  I am of the opinion that the trial court misapplied the law when it concluded that, because

Ressler was prejudiced, dismissal of the action was the appropriate sanction.

[¶ 22]  We have stated that "dismissal of a claim should not be imposed if an alternative, less drastic, sanction is available and is equally effective" when a court exercises its inherent power to sanction. *Bachmeier v. Wallwork Truck Ctrs.*, 507 N.W.2d 527, 533 (N.D.1993) (*"Bachmeier I"*).  "Dismissal of the entire case with prejudice is perhaps the most restrictive sanction which exists. Imposition of this sanction before the start of trial exacerbates this harshness.  We prefer that disputes be settled on the merits." *Id.*

> Valid considerations include, but are not limited to:  the culpability, or state of mind, of the party against whom sanctions are being imposed;  a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case;  and, the availability of less severe alternative sanctions.

*Id.* at 534.

[¶ 23]  The trial court has failed to weigh and balance the degree of prejudice to Ressler.  Although Ressler insists it has been prejudiced because its expert did not have an adequate amount of time to inspect the installation of the siding, Ressler does not argue its expert could not provide an opinion helpful to its defense based on the photographs, video, and information within the knowledge of Ressler employees.  The affidavit of James A. Skaret, an expert for Ressler, merely states that notification on a Friday that the siding would be removed on a Monday, which was a holiday, is not enough time to inspect. Ressler fails to provide any evidence that its inability to have an expert inspect the siding within the three-day window has foreclosed its ability to defend itself.  We have stated "[p]rejudice is a matter of degree." *Id.* at 535.  The record does not

reveal whether Ressler had an expert inspect the siding between the second installation of the siding in September 2007 and the commencement of the action in August 2010. We do know from the record that the siding was first installed, then found defective, and removed and replaced with the same siding a second time by Ressler all in September 2007. The record indicates, after the second installation by Ressler, the same problems with the siding began to appear and Ressler made another warranty claim on behalf of the Fines to the manufacturer of the siding. The record shows that in January 2010 the manufacturer denied the claim and Fines notified Ressler of the manufacturer's position. The record indicates Ressler had numerous contacts with Fines concerning their claim for defective installation after the warranty claim was denied. Ressler has not established that its inability to have an expert inspect the siding, in the three-day window it was given, prejudiced its defense of this claim to the degree of making it impossible to mount a defense. In fact, the record contains no expert testimony stating a defense could not be proven because of the removal of the siding. I am of the opinion a finding of prejudice supporting the sanction of dismissal requires a showing that the evidence destroyed could not be provided from other sources.[1]

Here, the trial court found prejudice without accounting for the full record before it. James A. Skaret's affidavit states:

5. *Inspection using photographs* provided by others *is an option* if there is no other alternative. However, there is often pertinent evidence that is not depicted by photographs. (Emphasis added.)

The record does not reveal whether Skaret ever reviewed the available photographs taken before and during the residing or the video taken of the residing project. Skaret does not state whether he has reviewed any of the available evidence, including evidence available from Ressler and its employees, concerning the installation of the siding or that it is not adequate for him to form an opinion. Skaret's affidavit speaks in general terms. Skaret never explains in his affidavit what "pertinent evidence" is often not depicted in photographs, whether it is critical evidence, or whether it can be obtained by other means. The major point of Skaret's affidavit is that three days was not a reasonable amount of time to conduct an inspection of the siding before it was removed. Based on this record, it is not clear what degree of prejudice to Ressler's defense resulted from the removal of the siding. Therefore, there is no basis in fact for the trial court's finding that Fines'

1. Proposed amendments to the federal rules by members of the corporate bar would require a party seeking spoilation sanctions to prove that: (1) specified information relevant and material to its claim was lost, (2) it suffered demonstrable prejudice; and (3) no alternative source exists for the specified information, documents, or tangible things. Letter from Robert D. Owen, of Sutherland Asbill & Brenan, L.L.P., to the Honorable David G. Campbell, Chair Advisory Committee on Civil Rules (Oct. 24, 2011) (*available at* http://www.uscourts.gov/uscourts/RulesandPolicies/rules/DallasMiniConf_Comments/Robert_Owen_Adv_Comm_Submission_final.pdf). A further proposed amendment would require

that a finding of culpability can only be made if relevant and material evidence is "willfully destroyed for the purpose of preventing its use in litigation." Lawyers For Civil Justice, et al., *"The Time is Now: The Urgent Need for Discovery Rule Reforms,"* (Oct. 31, 2011) (submitted to the Civil Rules Advisory Committee) (*available at* http://www.uscourts.gov). The Judicial Conference Discovery Subcommittee is considering drafting amendments to the Federal Rules of Civil Procedure for preservation of evidence and sanctions rules. *See Minutes Discovery Subcommittee of the Civil Rules Advisory Comm.* 10–19 (Nov. 7–8, 2011).

action in removing the siding deprived Ressler of the opportunity to have an objective witness testify.

[¶ 24] It must be recognized that in defective construction claims, mitigation of damages is an important consideration. Fines details in her affidavit her concern for further deterioration of the building if the siding was not replaced before winter weather began. Fines' reasons for proceeding with the residing goes to "the culpability, or state of mind, of the party against whom sanctions are being imposed." *Bachmeier I,* 507 N.W.2d at 534. Fines states in her affidavit that this is a rental complex, it was beginning to look "dilapidated," and it was becoming difficult to show the apartments. Fines states there were gaps in the siding where the wall of the complex was actually visible and the siding was buckling. Fines states their motivation in getting the building resided was their attempt to mitigate the damage to the building and loss of tenants. The trial court found Fines culpable in the destruction of the siding: Fines obtained an estimate for removal in July 2010, there was no emergency or reason the project could not wait, and Fines ignored the request to preserve the siding. The trial court fails to note that Fines' complaint dated July 28, 2010, stated they received repair estimates to replace the damaged siding. The trial court does not acknowledge that the building had already gone through the winters of 2007–2008, 2008–2009, and 2009–2010. Conceivably, there could have been a high cost to the preservation of the siding on this building for another winter. The trial court does not mention those portions of Fines' affidavit pointing out that Shawn Ressler had inspected the building, the building was subjected to deterioration due to the condition of the siding, the Fines had a duty to mitigate their damages, and North Dakota weather can shorten the season for resid-

ing and cause further damage to the building. The evidence is Ressler has known of the problems with the siding from September 2007 to September 2010. I find it difficult to conclude Ressler or a third party did not have an adequate time to inspect the building. One may ask: "Who is the neglectful party here?" The trial court did not properly analyze the state of mind or culpability of Fines as required by *Bachmeier I* or the degree of prejudice to Ressler. *See* 507 N.W.2d at 534. It is in the application of the spoliation test that the trial court erred.

[¶ 25] Finally, the trial court failed to adequately consider less severe sanctions. The trial court concluded that "[o]nce the siding was removed, the evidence of the manner and means of installation was destroyed." There is nothing in this record to support that finding. The trial court never acknowledges that Fines' affidavit states that there are numerous photographs of the siding taken both before removal and during the residing project, together with a video of the "defective installation." We do not know if Ressler has photographs, video, or whether its employees who installed the siding have information pertinent to the issue of the "manner and means of installation." The trial court failed to acknowledge that Skaret states photographs are "an option." We do not know if Ressler ever had a third party inspect the siding any time before it was removed. Ressler did not file an affidavit in support of its motion for summary judgment other than Skaret's affidavit. It is true that removal of the siding destroyed one form of evidence of the manner and means of installation, but certainly not all of the evidence of the manner and means of installation. The trial court concludes determination of whether Ressler's installation of the siding was defective is "impossible," therefore, "dismissal of the

Complaint is the only appropriate sanction." The record does not establish it is "impossible" to defend the action. These facts support imposition of some form of sanction, but not dismissal. A more appropriate sanction would be an adverse presumption instruction, exclusion of Fines' third-party expert witness, or an award of costs caused by the spoilation. At this point in the case, the degree of prejudice to Ressler's defense is not known. The trial court was bound to order the least drastic sanction available to mitigate the prejudice Ressler suffered. *See Bachmeier I,* 507 N.W.2d at 533. It is an abuse of discretion to dismiss an action on this record and given these circumstances. The trial court failed to tailor the sanction to the facts known at the time of the motion for summary judgment.

[¶ 26] I would reverse and remand the action to the trial court.

[¶ 27] Mary Muehlen Maring

WILLIAM F. HODNY, S.J.

I join the dissent.