2016 ND 70

**WELCH CONSTRUCTION & EX-
CAVATING, LLC, Plaintiff
and Appellee**

v.

**Linh Duc DUONG, d/b/a Classy Nails,
Defendant and Appellant.**

No. 20150197.

Supreme Court of North Dakota.

March 18, 2016.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

David A. Tschider, Bismarck, N.D., for plaintiff and appellee.

Monte L. Rogneby, Bismarck, N.D., for defendant and appellant.

McEVERS, Justice.

[¶ 1] Linh Duc Duong, doing business as Classy Nails, appeals from a judgment entered after a bench trial awarding Welch Construction & Excavating, LLC, $30,825, plus interest, for the balance due on a construction contract. We conclude the district court did not clearly err in finding: (1) the parties did not orally contract for a specific completion date for the construction project; (2) Welch Construction did not unreasonably delay completion of the project; and (3) Duong failed to establish his damages for costs to repair and lost profits for Welch Construction's claimed failure to complete the project according to his specifications. We affirm.

I

[¶ 2] Welch Construction sued Duong, alleging the parties contracted for Welch Construction to remodel a vacant retail space in Kirkwood Mall into a Classy Nails salon for $92,225. Welch Construction alleged it completed the work and Duong failed to pay the balance of $30,825 due under the contract. Duong answered and counterclaimed, denying he owed an outstanding balance under the contract and alleging Welch Construction breached the contract by failing to remodel the retail space in a timely and workmanlike manner according to his specifications. Duong claimed he was entitled to a setoff against any balance owed under the contract for his damages caused by Welch Construction's failure to complete the work before Thanksgiving 2013 and failure to construct the salon according to his specifications. Duong sought lost profits and damages for repairing the work according to his specifications.

[¶ 3] After a bench trial, the district court concluded the parties' written agreement did not include a completion date for the work and Duong presented no evidence of either a written or an executed oral agreement establishing the parties contracted for a completion date before Thanksgiving 2013. The court found the parties signed an estimate forming a writ-

ten contract on October 29, 2013, the parties knew there was a four to six week time lag between an October 29, 2013 application for a city building permit and issuance of that permit, and there was also a four to six week wait for delivery of custom flooring ordered by Duong on October 30, 2013. Cody Welch, Welch Construction's owner, testified no significant delays occurred once work began on the project and the court found Welch Construction's evidence that there was no promised completion date was more reasonable than Duong's version of the completion date. The court found Duong failed to establish Welch Construction promised the work would be done before Thanksgiving 2013. The court alternatively found Duong failed to establish the alleged failure to complete the project on time caused him damages, explaining his evidence about damages was speculative. The court ruled that Welch Construction completed the work on time, that Duong failed to establish the cost to repair the claimed defects to conform to his specifications, and that he failed to establish how the claimed defects impacted his profits. The court said Duong failed to complain about specific items of workmanship while the project was ongoing, refused to participate in a walk through after the completion date on December 26, 2013, and refused to allow Welch Construction to return to the project to address his complaints. The court also said that for some of the claimed defects, Duong presented no evidence of the cost to correct the work or the effect of the claimed defects on his lost profits. The court concluded Welch Construction did not breach the contract, Duong was not entitled to damages, and Welch Construction was entitled to the balance of $30,825 due under the contract.

II

■ [¶ 4] Duong argues the district court erred in not recognizing the parties'

contract included oral terms for a designated completion date and for the work to be done according to his specifications. He contends the court erred in not finding Welch Construction breached its obligation to construct the salon as designed by him in a workmanlike manner and erred in not finding Welch Construction did not complete the work by the agreed completion date. He thus claims the court erred in not awarding him damages for Welch Construction's breach of contract.

■ [¶ 5] We review Duong's arguments in the context of guidelines for breach of contract claims. "A breach of contract is the nonperformance of a contractual duty when it is due." *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 13, 730 N.W.2d 841. To prevail on a breach of contract claim, a party asserting the breach must prove the existence of a contract, a breach of the contract, and damages flowing from the breach. *Id.* Whether a party has breached a contract is a finding of fact subject to the clearly erroneous standard of review. *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* Under the clearly erroneous rule, we do not reweigh conflicting evidence, and we give due regard to a district court's opportunity to judge the witnesses' credibility. *Cavendish Farms, Inc. v. Mathiason Farms, Inc.,* 2010 ND 236, ¶ 20, 792 N.W.2d 500. A district court's findings of fact must be adequate to understand the basis for the court's decision. *Abelmann v. Smartlease USA, L.L.C.,* 2014 ND 227, ¶ 18, 856 N.W.2d 747.

■ [¶ 6] Generally, the construction of a written contract to determine its

legal effect is a question of law for the court to decide. *Myaer v. Nodak Mut. Ins. Co.*, 2012 ND 21, ¶ 10, 812 N.W.2d 345. Contracts are construed to give effect to the parties' mutual intent as it existed at the time of contracting. N.D.C.C. § 9–07–03. The parties' intent is ascertained from the writing alone whenever possible. N.D.C.C. § 9–07–04. Under N.D.C.C. § 9–06–07, "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." However, N.D.C.C. § 9–06–07 does "not preclude proof of the existence of a separate oral stipulation or agreement as to any matter on which the written contract was silent, and which is not inconsistent with its terms, if from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them." *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752, 755 (N.D.1990). *See also Langer v. Bartholomay*, 2008 ND 40, ¶ 14, 745 N.W.2d 649; *Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.*, 1998 ND 111, ¶¶ 18–19, 579 N.W.2d 576; *Smith v. Michael Kurtz Constr. Co.*, 232 N.W.2d 35, 39 (N.D.1975); *Putnam v. Dickinson*, 142 N.W.2d 111, 119 (N.D.1966); *Baldus v. Mattern*, 93 N.W.2d 144, 156 (N.D.1958). "[W]here an agreement is partly written and partly in parol, that part which is in parol and is not mentioned or covered in the written contract may be proven by competent testimony." *Delzer*, at 755.

[¶ 7] "Time is of the essence of a contract if it is provided expressly by the terms of the contract or if such was the intention of the parties as disclosed thereby." N.D.C.C. § 9–07–23. "Unless the intent that time is of the essence is manifest from the face of the contract, it is a question to be determined by the trier of fact." *Keller v. Hummel*, 334 N.W.2d 200, 203 (N.D.1983). "Where time is not of the essence, a reasonable delay in performance does not constitute a breach of contract; however, an unreasonable delay constitutes a breach." *Id.* The determination of a reasonable time is a question of fact. *Id.*

[¶ 8] Here, the parties' written contract consisted of Welch Construction's estimate, dated October 22, 2013, which the court found the parties signed on October 29, 2013. Welch Construction's written estimate did not include a completion date for the project. According to Duong, he told Cody Welch the project had to be done as soon as possible. Duong testified Cody Welch told him the project could be finished within thirty days after starting and also said it would be possible to finish the project by Thanksgiving. According to Duong, he construed Welch's statement as a promise the project would be finished by Thanksgiving. Duong also claimed that when the work was not completed by Thanksgiving, the parties orally agreed to a completion date before Christmas. Both Cody Welch and his brother, Casey Welch, denied they promised Duong a specific completion date and testified the project could not be completed by Thanksgiving because of the late October starting date, the four to six week time frame for getting a building permit and the custom flooring, and the scope of the remodeling work.

[¶ 9] The district court found Welch Construction's version of the completion date was more reasonable and believable than Duong's version based on the parties' execution of the contract on October 29, 2013, and the time frames for obtaining the building permit and the custom flooring. Although the court did not make an explicit finding about whether the contract was completed without unreasonable delay,

the court cited Cody Welch's testimony that there were no significant delays once work began on the project and found his version of the completion date was more reasonable and believable. The court's findings are sufficient to understand the basis for the court's decision that the parties' contract did not include a completion date and that Welch Construction did not unreasonably delay completion of the project. The court did not fail to recognize the parties' agreement included oral terms; rather, the court found that Duong did not establish Welch Construction orally agreed the work would be done before Thanksgiving 2013, or by a specific date and that Welch Construction's version of the completion date was more credible than Duong's version of the completion date. Evidence in the record supports the district court's findings, and we do not reweigh that evidence or reassess the credibility of the witnesses. We are not left a definite and firm conviction the court made a mistake in finding there was no agreement for a specific completion date for the project, and we conclude the court's findings about the completion date are not clearly erroneous.

[¶ 10] Duong argues the district court erred in not finding Welch Construction breached its obligation to remodel the retail space into a Classy Nails salon according to his express specifications and the parties' agreement.

[¶ 11] This Court has said that "[i]n building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose." *Air Heaters, Inc. v. Johnson Elec., Inc.,* 258 N.W.2d 649, 653 (N.D.1977) (quoting *Markman v. Hoefer,* 252 Iowa 118, 106 N.W.2d 59, 62 (1960)). As we have explained, to prevail on a breach of contract claim, a party asserting the breach must prove the existence of a contract, a breach of the contract, and damages flowing from the breach. *Barrett v. Gilbertson,* 2013 ND 35, ¶ 7, 827 N.W.2d 831; *WFND,* 2007 ND 67, ¶ 13, 730 N.W.2d 841.

[¶ 12] According to Duong, he contracted with Welch Construction to remodel the space so it was aesthetically the same as his other two Classy Nails salons in Bismarck. He testified he wanted the surfaces, including the trim, smooth and shiny with high gloss so it would be easy to clean and he did not want any sharp edges that children could run into and get hurt. He claims Welch Construction failed: (1) to build arches over windows in the salon according to his specifications; (2) to properly complete the painting of the remodeled space; (3) to properly install a column at the front of the salon; (4) to properly install and finish the trim in the salon; (5) to install rounded columns as wall separators in the salon; (6) to run electrical wires behind the walls to preserve a clean look; (7) to properly construct the mechanical room to be neat and clean as requested by him; and (8) to properly install the air handling unit, which resulted in ceiling leaks in the mechanical room. Duong argues the district court erred in not finding Welch Construction breached the contract by failing to remodel the space into a Classy Nails salon according to his express specifications.

[¶ 13] The district court made findings addressing Duong's claims about a loose column outside the salon entrance, the failure to properly paint trim, the lack of a smooth and shiny finish on the trim, the location of electrical wires in conduit outside the wall instead of behind the walls, the bathroom size, and "other issues." For the claimed improperly painted and finished trim and electrical wires, the court

found Duong presented no evidence to establish how much it would cost to fix those claimed defects or how those defects adversely affected his business profits. For the claimed loose column, the court found that if the column was loose, it was likely due to being run into after it was installed and not poor workmanship. The court found the bathroom was built according to the size specified in the plans. The court found the identified "other issues" were cosmetic defects that could all be repaired in about five hours and Duong presented no evidence of the cost to correct those "other issues," which included:

> electrical outlets for televisions in the ceiling instead of the walls; water leak around the rooftop air handling unit; outer windows were supposed to be arched not square; columns inside shop were to be rounded corners not square corners; exhaust vents in shop and in bathroom are not the right sizes; furnace installed but not requested by Duong; dryer vent looks "messy"; water lines in utility room "don't look professional"; telephone wiring is not "neat"; outlet in equipment room is a danger to the public" and tile lines "don't look nice".

The court found Duong's evidence about damages relating to all the items he claimed were not done according to his express specifications was his testimony his damages were $18,000 to $20,000 with no supporting evidence or documentation and he presented no evidence about the effect of those issues on his lost profits.

[¶ 14] To prevail on a breach of contract claim, a party asserting the breach must prove the existence of a contract, a breach of the contract, and damages flowing from the claimed breach. *Barrett,* 2013 ND 35, ¶ 7, 827 N.W.2d 831; *WFND,* 2007 ND 67, ¶ 13, 730 N.W.2d 841.

[¶ 15] Here, we need not address whether the parties expressly contracted for Welch Construction to complete the project according to Duong's specifications and whether Welch Construction breached that requirement, because we conclude the court did not clearly err in finding Duong failed to establish damages flowing from the claimed breach. The district court was entitled to weigh Duong's testimony about his damages for the cost to repair the items he alleged were not done according to his specifications. The court determined his testimony and evidence was not credible and was speculative and he failed to establish his damages for the costs to fix the items he claimed did not meet his specifications. We can understand the reason for the court's decision. We do not reweigh the evidence or reassess the credibility of the witnesses. Evidence in the record supports the court's findings, and we are not left with a definite and firm conviction the court made a mistake. We conclude the court's findings about Duong's claimed damages are not clearly erroneous.

### III

[¶ 16] We affirm the judgment.

[¶ 17] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

[¶ 18] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., disqualified.